## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**FREDDIE J. BANKS (#443105)**                         **CIVIL ACTION**

**VERSUS**

**BURL N. CAIN, ET AL.**                               **NO. 15-0017-BAJ-EWD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 6, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**FREDDIE J. BANKS (#443105)**                                    **CIVIL ACTION**

**VERSUS**

**BURL N. CAIN, ET AL.**                                          **NO. 15-0017-BAJ-EWD**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The State has filed a response in opposition to Petitioner's application. There is no need for oral argument or for an evidentiary hearing. Petitioner's application is untimely.

Petitioner, Freddie J. Banks, challenges his 2008 convictions and sentences entered in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on one count of second degree murder, one count of armed robbery and one count of being a felon in possession of a firearm. Petitioner contends (1) that the trial court erred in failing to grant a mistrial or motion for new trial based upon the State's improper reference to a statement purportedly made by Petitioner that was not disclosed prior to trial, (2) that the trial court erred in failing to grant a mistrial or motion for new trial based upon the presentation of a coroner's toxicology report that was exculpatory and that was not disclosed prior to trial, (3) that the evidence was contradictory, was not fully provided to the defense prior to trial, and was insufficient to support the convictions, (4) that "false evidence" was presented during trial, and (5) that he was

denied the right to present a defense based upon the trial court's failure to provide funding for a defense expert.

A review of the record reflects that Petitioner was indicted on charges of second degree murder, armed robbery and being a felon in possession of a firearm. After a jury trial conducted in April 2008, Petitioner was convicted on all counts. After the denial of post-trial motions, Petitioner was sentenced to serve life imprisonment in connection with the second degree murder charge, to forty-five (45) years in confinement in connection with the armed robbery charge, and to ten (10) years in confinement in connection with the felon-in-possession charge, with all sentences to be served concurrently and without the benefit of probation, parole or suspension of sentence.

Petitioner appealed the convictions and sentences. On June 12, 2009, the Louisiana Court of Appeal for the First Circuit affirmed Petitioner's convictions and sentences. *See State v. Banks,* 11 So.3d 1242, 2009 WL 1655006 (La. App. 1st Cir. 2009). Petitioner also sought supervisory review in the Louisiana Supreme Court, which Court denied review without comment on March 12, 2010. *See State v. Banks*, 28 So.3d 1024 (La. 2010). Upon the failure of Petitioner to file an application for a writ of certiorari in the United States Supreme Court, his convictions and sentences became final on June 10, 2010 after expiration of the ninety-day period allowed for him to do so. *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003) (recognizing that a conviction becomes final for federal purposes after the 90-day period allowed for a petitioner to proceed in the United States Supreme Court if he has not pursued such relief).

Approximately sixteen months after the finality of his conviction, on or about October 6, 2011,[1] Petitioner filed an untimely Application for Reconsideration in the Louisiana Supreme Court, which Application was denied on December 16, 2011.  *See State v. Banks*, 76 So.3d 1189 (La. 2011).

On or about March 20, 2012, approximately three (3) months after the denial of Petitioner's untimely Application for Reconsideration before the Louisiana Supreme Court, Petitioner filed an initial "shell" application for post-conviction relief ("PCR") in the state trial court, wherein he asserted no specific assignments of error and no specific claims for relief whatever.[2]  Petitioner thereafter sought to supplement that application by filing a Memorandum in support thereof on or about May 2, 2012, wherein he asserted claims regarding the alleged presentation of false evidence by the prosecution, the failure of the trial court to provide funds to retain a defense expert, and

---

1    The state court record does not include a copy of Petitioner's Application for Reconsideration before the Louisiana Supreme Court.  Notwithstanding, Petitioner acknowledges that he filed such Application on or about October 6, 2011, and this Court finds that a review of this pleading is not necessary for a resolution of the instant matter.

2    Petitioner's initial "shell" application for post-conviction relief was not dated but was stamped "Received" in the state trial court on April 5, 2012.  The United States Court of Appeals for the Fifth Circuit has instructed that federal habeas courts within the State of Louisiana must apply Louisiana's "mailbox rule" when determining the filing date of a petitioner's state court filings.  Accordingly, pleadings submitted by a *pro se* habeas petitioner are considered to be "filed" in state court as of the moment that the prisoner places them in the prison mail system for submission to the court, not on the date that the pleadings are ultimately received or docketed by the receiving court.  *See Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006); *Lane v. Rogers*, 2012 WL 3160034, *1 n. 3 (E.D. La. June 21, 2012).  Although Petitioner's initial PCR application was not dated, he asserts, without supporting documentation, that the envelope forwarding the application to the state trial court was postmarked March 20, 2012, which is the earliest date that the Court can utilize as the date he potentially gave it to prison officials for mailing.  In the interest of fairness, the Court will utilize that date as the presumptive date of filing.  In addition, with one exception, *see* note 3, *infra*, the Court in hereafter referencing the dates of filing of Petitioner's various *pro se* pleadings in the state courts and in this Court, will utilize the dates that Petitioner apparently signed his respective pleadings as the dates of filing thereof in the respective courts.

ineffective assistance of counsel.[3]  Notwithstanding, pursuant to Ruling dated November 20, 2012, the trial court denied Petitioner's initial PCR on procedural grounds, finding it to have been presented in improper form and relying upon La. Code Crim. P. art. 926.  Only in the alternative did the trial court address the three substantive claims presented in Petitioner's late-filed supplemental Memorandum, finding the first two claims therein to be without merit and finding the third to be, in part, without merit and otherwise duplicative of claims addressed in Petitioner's direct appeal.

Instead of proceeding before the appellate courts in connection with the denial of his initial PCR application and supplemental Memorandum, Petitioner thereafter filed a second PCR application in the state trial court on January 9, 2013, seven weeks later, complaining that the trial court had not properly handled his initial PCR application because it had failed to send him notice informing him that the initial "shell" application was procedurally deficient.  The trial court summarily dismissed this second PCR application on May 20, 2013, finding it to be procedurally deficient on several grounds.  Whereas Petitioner then sought additional review of this determination before the Louisiana appellate courts, by filing writs of supervisory review before the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court, the state appellate courts denied such review, with the intermediate appellate court denying review on procedural grounds on October 8, 2013 (finding the application to be untimely and citing La. Code Crim. P.

---

3   As with Petitioner's initial "shell" PCR, his subsequently-filed supporting Memorandum is not dated.  Whereas that Memorandum is stamped as having been "Received" by the state trial court on May 9, 2012, Petitioner asserts that the forwarding envelope bears a postmark of May 2, 2012.  Accordingly, as with the initial "shell" filing, the Court will utilize the earlier date as the date of filing of the referenced Memorandum.

art. 930.8(A)) and with the Louisiana Supreme Court denying review without comment on June 13, 2014.

Finally, on or about January 14, 2015, approximately seven months after the above-referenced writ denial in the Louisiana Supreme Court, Petitioner filed his federal habeas corpus application before this Court. Based on the foregoing procedural recitation, the State contends that Petitioner's application should be dismissed as untimely.

Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date that the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). As provided by the referenced statute, the time during which a subsequent properly-filed application for state post-conviction or other collateral review is thereafter pending before the state courts with respect to the pertinent judgment or claim shall not be counted toward any part of the one-year limitations period. 28 U.S.C. § 2244(d)(2). However, the time during which there are not any properly-filed post-conviction or other collateral review proceedings pending does count toward calculation of the one-year period. *Flanagan v. Johnson,* 154 F.3d 196, 199 n. 1 (5th Cir. 1998). *See also Fields v. Johnson*, 159 F.3d 914, 916 (5th Cir. 1998). To be considered "properly filed" for purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the applicable laws and procedural rules governing filings. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), *citing Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Further, a state application is seen to be "pending" both while it is before a state court for review and also during the interval of time after a state court's disposition while the petitioner is procedurally authorized under state law to

proceed to the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

In the instant case, as noted above, Petitioner's conviction became final on June 10, 2010, ninety (90) days after denial of his application for supervisory review in the Louisiana Supreme Court in connection with his direct appeal. *See Roberts v. Cockrell*, *supra,* 319 F.3d at 694. The one-year time clock then began to run on that date, and it is clear that Petitioner then allowed approximately sixteen months of un-tolled time to elapse, well more than a year, before filing an untimely Application for Reconsideration before the Louisiana Supreme Court on October 6, 2011. This sixteen-month period alone easily supports a finding that Petitioner's application before this Court is untimely. Notwithstanding, as discussed hereafter, because Petitioner seeks to excuse a part of this lengthy period by reason of the doctrine of equitable estoppel, the Court will address the remainder of Petitioner's post-conviction filing history so as to calculate the passage of other periods of tolled and un-tolled time.

Assuming, without deciding, that the filing of petitioner's untimely Application for Reconsideration before the Louisiana Supreme Court on October 6, 2011 was "properly filed" so as to interrupt the running of the limitations period,[4] the limitations period was tolled on that date and remained tolled until December 16, 2011, when the Application was denied by the Supreme Court. The limitations period then re-commenced running upon such denial and, inasmuch as Petitioner did not file his initial "shell" PCR application until, at the earliest, March 20, 2012 (and also assuming that the deficient "shell" application was sufficient to interrupt the limitations

---

4  Whereas Louisiana law provides that a timely-filed application for rehearing may be entertained by the Louisiana Supreme Court under certain circumstances, it is far from certain that an untimely application for reconsideration would qualify as a "properly filed" motion that would interrupt the limitations period.

period), an additional period of ninety-four (94) days of un-tolled time elapsed prior to such filing, *i.e.*, between December 16, 2011 and March 20, 2012. The limitations period then remained tolled during the pendency of Petitioner's initial PCR application (as supplemented by the subsequently-filed supporting Memorandum). Specifically, the limitations period remained tolled until the state trial court denied the initial PCR application on November 20, 2012, and the limitations period remained tolled by operation of law for an additional thirty-day period thereafter, until December 20, 2012, during which time Petitioner was authorized by Louisiana law to seek further review before the intermediate appellate court. This is because Louisiana procedural law provides for a 30-day period to proceed to the next level of state review, *see* Rule 4-3, Uniform Rules, Louisiana Court of Appeal, and because, as explained above, the limitations period remains tolled for federal purposes both during the time that a properly-filed post-conviction review application is pending and also during the interval after the ruling thereon when there is the right under state law to proceed to the next level of state review. *Melancon v. Kaylo, supra*, 259 F.3d at 406.

Notwithstanding the foregoing, the applicable limitations period again began to run on December 21, 2012, upon the expiration of the 30-day appeal period, because Petitioner did not file a timely application for supervisory review before the intermediate appellate court after the denial of his initial PCR application on November 20, 2012. Instead, Petitioner waited a period of time thereafter and then filed a second PCR application in the state trial court on January 9, 2013. Thus, an additional period of nineteen (19) days of un-tolled time was allowed to elapse during this interval after the denial of Petitioner's initial PCR application and before his filing of the second PCR application, *i.e.*, between December 20, 2012 and January 9, 2013.

Based upon the information available in the record, it appears that Petitioner's second PCR application thereafter remained pending through the date of the denial thereof in the state trial court on May 20, 2013, through the subsequent timely review thereof in the intermediate appellate court (which was denied on October 8, 2013 as untimely), and through the subsequent review before the Louisiana Supreme Court (which was denied on June 13, 2014). Thus, the limitations period apparently remained tolled during the entirety of this period, and did not begin to run again until June 13, 2014, when the Louisiana Supreme Court denied supervisory review in connection with Petitioner's second PCR application.

Finally, after the finality of Petitioner's second PCR application, through denial of review thereof in the Louisiana Supreme Court, Petitioner waited approximately seven months before filing the instant federal habeas application in this Court on January 14, 2015. During this interval, an additional period of two hundred fourteen (214) of un-tolled time elapsed, *i.e.*, between June 13, 2014 and January 14, 2015, during which there was no pending post-conviction or other collateral review pending before the state courts.

Based upon the foregoing recitation, it is clear from the record that Petitioner's application for federal habeas corpus relief before this Court is untimely. Specifically, in addition to the initial 16-month interval that elapsed before Petitioner commenced any post-conviction review proceedings, there were additional periods of un-tolled time as discussed above, totaling three hundred twenty-seven (227) days (94 days + 19 days + 214 days), that must be included in the pertinent calculation. Absent statutory or equitable tolling, therefore, as hereafter discussed, it appears that the limitations period elapsed and that Petitioner's application is untimely.

In seeking to avoid the effect of the limitations period, Petitioner contends, relative to the initial 16-month period, that neither his attorney nor the Louisiana Supreme Court provided him

with notice of the Supreme Court's decision of March 12, 2010, denying supervisory review in connection with Petitioner's direct appeal. Specifically, he asserts that he did not receive such notice until more than a year later on April 5, 2011, upon making an independent inquiry to the state court. He contends that, as a result, he should not be penalized for the entirety of the 16-month period that elapsed between the finality of his convictions and his filing of the untimely Application for Reconsideration before the Louisiana Supreme Court in October 2011. This contention may be interpreted as asserting that the long delay in notifying him of the Supreme Court writ denial should result in either (1) statutory tolling under 28 U.S.C. § 2244(d)(1)(B), which provides for the tolling of the limitations period when a petitioner faces an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States," or (2) equitable tolling in light of the particular facts of this case. In this regard, equitable tolling of the limitations period may be available in rare instances if "some extraordinary circumstance stood in [the petitioner's] way and prevented timely filing." *See Holland v. Florida*, 560 U.S. 631, 649 (2010). This Court will address both potential avenues for additional tolling in the instant case.

Statutory Tolling

Pursuant to 28 U.S.C. § 2244(d)(1)(B), the limitations period does not run against a habeas petitioner during the period that he faces a state-created impediment to filing that is "in violation of the Constitution or laws of the United States." By its terms, however, this provision applies only "if the applicant was prevented from filing by such State action." Thus, a petitioner asserting a state-created impediment under this provision has the burden of showing that "(1) he was prevented from filing a federal habeas corpus petition (2) by State action (3) in violation of the Constitution or federal law." *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003). The

Court concludes in the instant case, for two reasons, that the statutory tolling provided by this provision is not applicable to Petitioner's habeas corpus application before this Court.

First, the Fifth Circuit has strongly suggested that the statutory tolling which results from a state-created impediment under § 2244(d)(1)(B) is not triggered by a state court's mere delay in notifying a petitioner regarding the issuance of a ruling or order in the state court proceedings. Thus, in *Critchley v. Thaler*, 586 F.3d 318 (5th Cir. 2009), the Court noted that when the state merely "fails to provide notice of its ruling on a state habeas petition to the affected petitioner ..., equitable tolling rules govern that situation" instead of statutory tolling. *See id*. at 321 n. 3, *citing Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009). *See also Clarke v. Rader*, 721 F.3d 339, 343 (5th Cir. 2013) (noting that "[w]e have serious reservations about whether the State's failure to notify [the petitioner] of the ... denial provides a basis for a statutory tolling claim rather than merely an equitable tolling claim"). *Cf., Williams v. Thaler*, 400 Fed. Appx. 886, 889 (5th Cir. 2010) (noting that it is "unclear" whether a state's failure to provide notice of a writ denial "is a violation of constitutional or federal law under § 2244(d)(1)(B)"). Thus, it does not appear that the mere failure of the Louisiana Supreme Court in this case to send Petitioner a copy of the decision of March 12, 2010 denying his writ application on direct appeal constitutes State action that is "in violation of the Constitution or laws of the United States" or is sufficient to invoke the statutory tolling provided by § 2244(d)(1)(B).

Further, in order for statutory tolling to apply, Petitioner must show that the state-created impediment in fact prevented him from filing a timely habeas corpus application in this Court. In the instant case, however, Petitioner admittedly received actual notice on April 5, 2011 of the March 12, 2010 denial of his writ application by the Louisiana Supreme Court, *see* R. Doc. 1-2, at which time, only ten months had elapsed from the one-year limitations period since his conviction

had become final on June 10, 2010, and he had two months remaining within which to toll the limitations period by commencing state post-conviction relief proceedings and to thereafter file a timely federal habeas corpus application. Petitioner nonetheless waited a total six months, until October 6, 2011, before he even commenced state post-conviction relief proceedings by filing an untimely Application for Reconsideration before the Louisiana Supreme Court. Based upon this scenario, this Court is unable to conclude that Petitioner was in fact prevented from filing a timely habeas application in this Court by reason of the alleged delayed notice.

A somewhat analogous factual situation was presented in *Clarke v. Rader, supra*, wherein the Fifth Circuit concluded that statutory tolling under § 2244(d)(1)(B) did not apply. In *Clarke*, the petitioner complained, *inter alia*, that the final decision of the Louisiana Supreme Court denying his writ application in connection with his PCR application was not timely forwarded to him by the clerk of that court. Accordingly, he asserted that the delay in notice amounted to a state-created impediment to timely filing that warranted the application of statutory tolling. The Fifth Circuit disagreed, however, finding that the petitioner had received actual notice of the supreme court writ denial from his attorney with sufficient time remaining to file a timely federal habeas petition, and yet he had waited an additional two months to do so. Thus, the Court concluded that the petitioner had failed to meet his burden of showing "that the State's failure to notify him ... played any role in his failure to timely file" because he had received actual notice of the denial within weeks thereof, while he still had time to proceed. *See also McNac v. Thaler*, 480 Fed. Appx. 338, 344 (5th Cir. 2012) (finding no statutory tolling where, upon conclusion of a 4-month delay caused by the state court clerk's failure to process the petitioner's application, he still had time within which to file a timely federal application and so was not prevented from filing by the delay). For this reason, statutory tolling under 28 U.S.C. § 2244(d)(1)(B) does not apply.

Equitable Tolling

The one-year federal limitations period may also be subject to equitable tolling but only "in rare and exceptional circumstances." *See United States v. Patterson*, 211 F.3d 927, 928 (5th Cir. 2000). The doctrine of equitable tolling "applies principally where the plaintiff is actively misled ... or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999). In order to be entitled to equitable tolling, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006). Generally, a litigant seeking equitable tolling bears the burden of establishing two elements, (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Pace v. DeGuglielmo, supra*, 544 U.S. at 418. Ignorance of the law, lack of knowledge of filing deadlines, a temporary denial of access to research materials or the law library, and inadequacies in the prison law library are not generally sufficient to warrant equitable tolling. *Tate v. Parker*, 439 Fed. Appx. 375, 376 (5th Cir. 2011); *Felder v. Johnson*, 204 F.3d 168, 171-2 (5th Cir. 2000). Further, equitable tolling "is not intended for those who sleep on their rights." *Manning v. Epps*, 688 F.3d 177, 184 (5th Cir. 2012). Thus, a federal habeas petitioner is required to act with diligence and alacrity both during the period allowed for the filing of state post-conviction review proceedings and also after the conclusion of those proceedings in the state appellate courts. *See Ramos v. Director*, 2010 WL 774986, *4 (E.D. Tex. March 1, 2010). "The diligence required for equitable tolling purposes is reasonable diligence, ... not maximum feasible diligence," *Holland v. Florida*, 560 U.S. 631, 653 (2010) (internal quotation marks omitted), and equitable tolling decisions "must be made on a case-by-case basis." *Id*. at 649-50. In addition, whereas it has been found that "[l]ong delays in

receiving notice of state court action" may constitute extraordinary circumstances that warrant equitable tolling, *see Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000), a petitioner is required to act with due diligence after receiving such notice.  *Williams v. Thaler, supra*, 400 Fed. Appx. at 891.

In concluding that Petitioner is not entitled to equitable tolling in this case, the Court focuses upon the perceived lack of diligence shown by Petitioner in this case in proceeding in the state and federal courts after being informed that his state court writ application had been acted upon by the state supreme court on direct appeal.[5]  Specifically, he failed to proceed with reasonable alacrity so as to preserve his right to pursue federal habeas corpus relief in light of the procedural posture of the state court proceedings.  In this regard, it appears that although Petitioner alleges that he did not receive timely notice of the March 12, 2010 decision of the

---

5    The Court further notes that Petitioner's conclusory contention that he did not receive notification of the denial by the Louisiana Supreme Court of his writ denial on direct appeal in March 2010, when it was issued, is somewhat questionable.  In the first place, Petitioner cannot complain that such notice was not forwarded to him by the Supreme Court inasmuch as Petitioner was represented by an attorney at that time, and the Supreme Court clerk's office would not have forwarded such notice to Petitioner himself but instead to his attorney of record.  Further, in this regard, Petitioner has attached as exhibits to his habeas petition copies of correspondence from his attorney wherein the attorney repeatedly asserts that notification of the Supreme Court writ denial was forwarded to Petitioner at the time it was issued, *i.e.*, in March 2010.  *See* R. Doc. 1-2 at pp. 4-5.  Finally, the Court notes that the state court record contains copies of two motions seeking document production that were filed by Petitioner in the state trial court, one in July 2011 and one in September 2011.  In both of these motions, Petitioner makes reference to the denial of his Supreme Court writ application in March 2010, but he makes no suggestion that he had not received timely notice thereof at the time.  Nor does Petitioner, in either of his PCR applications, make any assertion regarding late notification of the Supreme Court writ denial.  In any event, the Court finds that the resolution of this issue is without legal significance because, as discussed hereafter, Petitioner admittedly received notice of the writ denial in April 2011, with approximately two months remaining in the one-year limitations period, yet waited approximately six months thereafter to file an untimely application for rehearing in the Louisiana Supreme Court in October 2011.  Even under a best-case analysis, this six-month period of un-tolled time, when added to the 327 days of un-tolled time that elapsed thereafter, clearly renders Petitioner's application before this Court untimely.

Louisiana Supreme Court denying his supervisory writ application on direct appeal, Petitioner was nonetheless advised of the issuance of that decision in April 2011, with no less than two months remaining in the one-year federal limitation period. Petitioner nonetheless admittedly waited approximately six months, or until October 6, 2011 before he filed his untimely Application for Reconsideration before the Louisiana Supreme Court. In addition, as discussed above, Petitioner allowed additional periods of un-tolled time to elapse thereafter, including a 94-day period after the denial of his untimely Application for Rehearing, a 19-day period after the denial of his initial PCR application, and a 214-day period after the finality of review in connection with his second PCR application. The Court is unable to disregard these lengthy periods during which Petitioner failed to proceed as warranted in this case.[6]

Finally, whereas Petitioner was not legally required to file an earlier "protective" federal habeas corpus application in order to show that he was acting with diligence, *see Palacios v. Stephens*, 723 F.3d 600, 607-08 (5th Cir. 2013), *citing Pace v. DeGuglielmo, supra,* 544 U.S. at 416, such a filing would have protected him from the running of the limitations period, and his failure to do so also weighs against a finding of equitable tolling in this case. *Id*.

Based on the foregoing, the Court finds that Petitioner is not entitled to equitable tolling. In short, there were periods totaling substantially more than a year that elapsed after the finality of

---

6    Upon conclusion of his state post-conviction relief proceedings, through denial of his writ applications by the Louisiana Supreme Court on June 13, 2014, Petitioner then waited an additional seven months, until January 14, 2015, to file the instant federal habeas corpus proceeding. This delay alone is ample evidence of a failure to act diligently and with alacrity in pursuing his federal rights. *See Baker v. Cain*, 2008 WL 3243993, *3 (5th Cir. 2008) (diligence not shown where the petitioner "waited approximately four months to file a federal petition after the Louisiana Supreme Court denied relief"); *Kelly v. Quarterman*, 260 Fed. Appx. 629 (5th Cir. 2007) (same, with four-month delay); *Melancon v Kaylo, supra*, 259 F.3d at 408 (same, with four-month delay). Accordingly, Petitioner has failed to show such diligent conduct as would warrant equitable tolling in connection with his habeas corpus application.

Petitioner's direct appeal in June, 2010, and after Petitioner was advised of same before he filed an application for further review in the state supreme court in October, 2011. Petitioner has not shown that he was acting with diligence during that lengthy period sufficient to support a finding of rare and exceptional circumstances that warrant the application of equitable tolling.

Finally, in certain rare instances, a petitioner may seek to avoid the effect of untimeliness by establishing that he is in fact innocent of the charged offenses. Specifically, in *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the United States Supreme Court concluded that actual innocence, if proven, may serve as a gateway through which a petitioner may pass to avoid a procedural impediment such as the statute of limitations. The Court cautioned, however, that viable actual-innocence gateway claims are rare, explaining that "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of ... new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 1928, *citing Schlup v. Delo*, 513 U.S. 298, 329 (1995) (internal quotation marks omitted). To be credible, a claim of actual innocence requires that a petitioner support his allegations of constitutional error with new reliable evidence, whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial. *Schlup v. Delo, supra*, 513 U.S. at 324. In the instant case, Petitioner has presented no new evidence, much less evidence sufficient to support a claim of actual innocence, and he has therefore failed to set forth a viable claim of actual innocence sufficient to avoid the operation of the limitations bar. Accordingly, Petitioner's application should be dismissed as untimely.[7]

---

7    The Court further notes, in the alternative, that the claims asserted in the instant proceeding are also subject to dismissal as being procedurally defaulted. In this regard, when a state court decision to deny post-conviction relief rests on a state procedural ground that is independent of the federal question raised by the petitioner and is adequate to support the judgment, the federal court

Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable

---

lacks jurisdiction to review the merits of the petitioner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Moore v. Roberts*, 83 F.3d 699, 701 (5th Cir. 1996). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement." *Coleman v. Thompson, supra*, 501 U.S. at 729-730, *citing Rose v. Lundy*, 455 U.S. 509, 518, (1982); *Moore v. Roberts, supra*, 83 F.3d at 703. This rule applies even if the state court addresses the substance of the claim in the alternative. *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).

For the independent and adequate state ground doctrine to apply, the state court adjudication of a habeas petitioner's claim must have been based on a state procedural rule. *Moore v. Roberts, supra*, 83 F.3d at 702; *Sones v. Harbett*, 61 F.3d 410, 416 (5th Cir. 1995). The procedural default doctrine presumes that the "state court's [express] reliance on a procedural bar functions as an independent and adequate ground in support of the judgment." *Id*. A petitioner can rebut this presumption only by establishing that the procedural rule is not "strictly or regularly followed" or, notwithstanding, by demonstrating (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson, supra*, 501 U.S. at 750; *Moore v. Roberts, supra*, 83 F.3d at 702.

In the instant case, the state trial court denied each of Petitioner's PCR applications on procedural grounds and reached the substantive claims therein only in the alternative. In addition, the Louisiana First Circuit Court denied review upon an express finding that Petitioner's application before that Court was untimely. Accordingly, this Court finds that the state courts' express invocation of procedural rules to dispense with a substantive consideration of Petitioner's claims asserted on post-conviction review acts as an independent and adequate bar that precludes this Court's consideration thereof.

whether the petition states a valid claim of a denial of constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original). In the instant case, the Court finds that reasonable jurists would not debate the denial of Petitioner's § 2254 application or the correctness of the procedural ruling. Accordingly, it is appropriate that, in the event that Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

## **RECOMMENDATION**

It is recommended that Petitioner's application for habeas corpus relief be denied, without prejudice, as untimely. It is further recommended that, in the event that Petitioner seeks to pursue an appeal, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on February 6, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**